**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.   9:19-CV-80196**

MARTIN E. O'BOYLE; JONATHAN
O'BOYLE; and WILLIAM RING,

     Plaintiffs,

v.

TOWN OF GULF STREAM, and
WANTMAN GROUP, INC.

     Defendants.

_____ /

**COMPLAINT**

Plaintiffs Martin E. O'Boyle ("Mr. O'Boyle"), Jonathan O'Boyle, and William Ring sue

Defendants Town of Gulf Stream ("Gulf Stream" or the "Town"), and Wantman Group, Inc.

("Wantman") and allege as follows:

**Parties, Jurisdiction, And Venue**

1.     Plaintiffs bring this action pursuant to 18 U.S.C. § 1983, Florida common law,

and the First Amendment as incorporated by the Fourteenth Amendment.

2.     This Court has jurisdiction under 28 U.S.C. § 1331, which gives district courts

original jurisdiction over civil actions arising under the Constitutional laws or treaties of the

United States. This Court has supplemental or pendant jurisdiction over the Florida common law

claims pursuant to 28 U.S.C. § 1367.

3.     This Court has jurisdiction under 28 U.S.C. § 1443(2), which grants district courts

jurisdiction over actions to secure civil rights extended by the United States government.

4.     Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b) because

events that give rise to this complaint occurred in this district.

116866794

5.      The Plaintiff MR. O'BOYLE is now and at all times pertinent a resident of the Town of Gulf Stream, Palm Beach County, Florida, which is located in the United States and within the Southern District of Florida.

6.      Plaintiff JONATHAN O'BOYLE is a resident of Florida, residing in Broward County.

7.      Plaintiff WILLIAM RING is a resident of Florida, residing in Broward County.

8.      The Defendant GULF STREAM is a municipal corporation of the State of Florida seated within the Southern District of Florida.

9.      The Defendant WANTMAN is a Florida for profit corporation with its principal place of business located in Palm Beach County, Florida.

## Background

**Mr. O'Boyle's Political History With Gulf Stream And The Town's Long History Of Retaliating Against Him For It**

10.     The Town of Gulf Stream is a wealthy waterside municipality that consists of approximately 1,000 residents that live on roughly 500 acres of land.

11.     Mr. O'Boyle has been a resident of the town of Gulf Stream for roughly 35 years, moving into the town in the early 1980s. He has been an active and vocal member of his community. He attends and participates in public meetings of the Town's council and has on numerous occasions publicly criticized the Town's government.

12.     Mr. O'Boyle is a supporter of Florida's public records law and often relies on public records for information about Gulf Stream and the decisions of his government.

13.     Article I, § 24 of the Florida Constitution, as codified through Florida's Public Records Act (Chapter 119, Fla. Stat.), guarantees Florida residents the right to inspect and make copies of public documents, including documents in the custody of local municipalities like Gulf

Stream. Despite Gulf Stream's obligation to make its records available for inspection, the Town has on numerous occasions unlawfully refused to provide the requested documents. Mr. O'Boyle has filed lawsuits as authorized by the Petition Clause of the First Amendment of the United States Constitution, as incorporated by the Fourteenth Amendment, Article 1, § 4 of the Florida Constitution, and Chapter 119, Fla. Stat., to enforce his constitutional right to inspect Gulf Stream's records.

14.     Mr. O'Boyle has filed numerous successful lawsuits against Gulf Stream for violations of Florida's public records law. None has been adjudicated meritless.

15.     In part due to Mr. O'Boyle's dissatisfaction with several of the Town's policies and practices, he has participated in numerous demonstrations against Gulf Stream and its officials that drew their ire and retaliation.

16.     In 2013, for example, Mr. O'Boyle filed plans to redesign his Gulf Stream home. The Town unreasonably rejected his plans. In response, Mr. O'Boyle made public records requests to the Town, several of which were not fulfilled by the Town and would be subject to public records litigation. He also painted the façade of his home with political messages critical of the Town and its then-Mayor and Commissioners. The Town took retaliatory action for these political statements, leading Mr. O'Boyle to file a federal civil suit for unlawful, unconstitutional retaliation. Gulf Stream settled its disputes with Mr. O'Boyle for $180,000 and issued Mr. O'Boyle an apology that expressly recognized "the stress and strife that the O'Boyle family has endured as a result of the Town's conduct."

17.      The Town retaliated against Mr. O'Boyle again in February 2014 after learning he intended to run for a seat on the Town's Council. During his campaign, Mr. O'Boyle placed campaign signs throughout Gulf Stream that apparently angered town officials. In retaliation, the

Town unlawfully ordered Mr. O'Boyle's campaign advertisements removed by Town police and other officials. During this same period, Mr. O'Boyle hired private planes to fly political campaign banners over Gulf Stream. In response, the Town threatened him with adverse action, including code enforcement hearings carrying daily fines of up to $500 per sign per day if he did not cease his protected political speech and/or criminal penalties up to 60 days jail time per violation per day. He would go on to lose his election.

18.     Because of the removal of his campaign signs, the threats of adverse action for his aerial political banners, and other retaliatory conduct by the Town during Mr. O'Boyle's political campaign, Mr. O'Boyle filed a civil rights action against the Town in March 2014. Once again, the Town settled its suit with Mr. O'Boyle and paid him $145,000.

19.     In March 2014, Mr. O'Boyle began protesting various Gulf Stream decisions by placing political banners on the side of his truck. To ensure maximum visibility and political effectiveness of his political signs, he parked the truck in front of Town Hall. In response, the Town proposed legislation which made it unlawful for Mr. O'Boyle to display political messages on his automobile outside of Town Hall. During public hearings on this retaliatory legislation, the Town prevented Mr. O'Boyle from engaging in public comment before enacting the ordinance. As a result, Mr. O'Boyle filed a lawsuit against the Town for selectively denying him a voice in the democratic process.

### Gulf Stream Conspires To Silence Mr. O'Boyle's Political Activity By Attempting To Characterize His Protected First Amendment Activity As Unlawful

20.     As a result of disfavored political activity by Mr. O'Boyle, including several successful lawsuits against the City to enforce his constitutional and statutory rights, Gulf Stream decided it needed to take a "firm stance" against Mr. O'Boyle's pending public records litigation. Accordingly, then-Mayor Scott Morgan announced in a June 2, 2014 letter to Gulf Stream

residents that he had hired Robert Sweetapple to serve as "special counsel" in order to defend the Town in pending public records lawsuits brought by Mr. O'Boyle and another town resident, Chris O'Hare.

21.     Gulf Stream's idea of taking a "firm stance" involved doing whatever it could to, on behalf of the Town, intimidate Mr. O'Boyle into ceasing his expressive and constitutionally protected actions against Gulf Stream.

22.     For example, almost immediately after being retained, Sweetapple began boasting to anyone that would listen that Mr. O'Boyle — as well as dozens of his colleagues, friends, and family members — were conspiring together to "extort" the Town of Gulf Stream and were guilty of violating the federal Racketeer Influenced and Corrupt Organizations Act ("RICO").

23.     As part of the Town's campaign to stop Mr. O'Boyle's lawsuits, the Town filed complaints with the Florida Bar against William Ring, Jonathan O'Boyle and other members of the law firm Mr. O'Boyle used to prosecute his public records suits against the Town. The Town filed these retaliatory Bar complaints to dissuade Mr. O'Boyle from continuing his litigation and to dissuade Jonathan O'Boyle and William Ring from allowing the firm to continue representing Mr. O'Boyle and Chris O'Hare in suits against the Town. None of the grievances (Bar Complaints) resulted in a finding of probable cause and all were dismissed.

**Gulf Stream Files RICO Lawsuits Against Plaintiffs Improperly Based Entirely On Protected Activity**

24.     As part of the Town's "firm stance" against Mr. O'Boyle's constitutionally protected and statutorily authorized litigation history against Gulf Stream, the Town devised a plan to further harass Mr. O'Boyle to such an extent that he would cease his First Amendment activities.

25.     Prior to October 10, 2014, the Town and its Officials began considering punishing Mr. O'Boyle by filing several lawsuits against him, as well as his family, friends, and associates, that alleged an unlawful conspiracy in violation of both the federal and Florida RICO Acts.

26.     On October 10, 2014, the Town held a public meeting where they discussed with attorney Gerald Richman ways to stop O'Boyle from bringing further lawsuits against the Town for failure to comply with Florida's Constitutional guarantee of access to public records as codified under Chapter 119. Specifically, Mayor Morgan stated, "[W]ith this RICO action, we then put a stop to the individual lawsuits on the public records requests. I'm confident that would be the result of this case." The Town voted unanimously to approve Attorney Richman's contingency fee agreement in connection with bringing a possible retaliatory RICO lawsuit.

27.     On several occasions Mr. Sweetapple, the Town's attorney, told Mr. O'Boyle's friends, colleagues, business associates, and even his attorneys that Mr. O'Boyle is a criminal and that they should sever their ties so as not to be caught in the impending litigation (implicitly threatening them in the process).

28.     On February 12, 2015, the Town of Gulf Stream, and a private company that has significant dealings with Gulf Stream called The Watman Group, Inc. jointly filed a federal class action complaint against plaintiffs and numerous others. Notably, the Wantman group had received only one (1) request for public records from one of the underlying RICO defendants. The RICO suit alleged Mr. O'Boyle's numerous public records requests and lawsuits to enforce those requests constituted unlawful racketeering activity. The Town and Wantman sought to recover money for the public records lawsuits, attorney fees, and for the United States Government to enjoin the RICO defendants from suing or conspiring to sue for public records.

29.     Thus, the predicate of the Town's suit against Mr. O'Boyle and his family, friends, and associates (including plaintiffs Jon O'Boyle and William Ring) was that they engaged in a conspiracy to bring *public records cases* — something Mr. O'Boyle had a statutory and Constitutional right to do. The Town's lawsuit was brought for expressly retaliatory purposes in a hope that the pressure of the suit would force him to cease critical First Amendment activity against Gulf Stream. The Town's primary motive in characterizing Mr. O'Boyle's activities as an unlawful was not because the Town believed an alleged crime had occurred. Rather, it was to retaliate against Mr. O'Boyle and the other Plaintiffs to punish, deter, and incapacitate them such that they would disassociate with each other and stop making public records requests or filing public records lawsuits.

30.     This suit was filed in retaliation for and to deter future First Amendment petitioning activity, the free exercise of First Amendment rights, and rights guaranteed by Article 1, §24 of the Florida Constitution as codified under Fla. Stat. 119.

31.     Around the same time period as the RICO action, the Town filed numerous counterclaims in Mr. O'Boyle's public records litigation. Those claims sought money from Mr. O'Boyle for bringing his public records suits, as well as attorney fees, and asked the State of Florida to enjoin Mr. O'Boyle, Ring, and Jonathan O'Boyle (and others) from suing or conspiring to sue the Town of Gulf Stream for public records violations.

**The Retaliatory RICO Suit Is Dismissed For Failure To State A Claim**

32.     On June 30, 2015, U.S. District Judge Kenneth Marra dismissed Gulf Stream's RICO action in its entirety, holding that filing public records requests and lawsuits are, as a matter of well-settled law, not RICO predicate acts. He further held that public records requests were absolutely protected activity under Florida constitutional and statutory law. He noted that, as a matter of law, the motive for making a public records request is irrelevant.

7

> Under Chapter 119 of the Florida Statutes, [O'Boyle, *et al.*] had the absolute right under current Florida law to file public records requests and then file lawsuits if the request went unanswered. The motive for making a public records request is irrelevant under Florida law.

*Town of Gulf Stream v. O'Boyle*, No. 9:15-CV-80182-KAM (ECF No. 47), p.7 (S.D. Fla. June 30, 2015) (citation omitted).

33.     The Town of Gulf Stream appealed Judge Marra's decision, and the United States Court of Appeals for the Eleventh Circuit affirmed his decision on all grounds.

**The Retaliatory Arrest and Continuing Criminal Prosecution of Mr. O'Boyle**

34.     On or about September 22, 2015,  Mr. O'Boyle was confronted by the Gulf Stream Police in the lobby of Town Hall immediately after a public Town meeting. 911 was called, and Mr. O'Boyle was taken to the emergency room by ambulance. Several days later, charges against O'Boyle were filed for retaliatory purposes at the Town's direction. The charges were subsequently enhanced from disorderly conduct and resisting arrest without violence to alleged trespassing in a public building.

35.     The Town continues to retaliate by pressing forward with these claims and has caused a process to have Mr. O'Boyle declared mentally incompetent and unable to defend himself. This motion was later denied.

**As A Result of Defendants' Unlawful and Retaliatory Conduct, Plaintiffs
Have Suffered Tremendous Injury**

36.     As a result of the Defendants' retaliatory RICO suit and pertinent state court counter claims brought against Plaintiffs and the unlawful arrest and prosecution of Mr. O'Boyle for exercising his First Amendment rights, Plaintiffs have each suffered substantial damages and injury.

## CLAIMS

### COUNT I – FIRST AMENDMENT RETALTION

### (GULF STREAM)

37.     Plaintiffs adopt and incorporate by reference paragraphs 1 through 36 above as though fully set forth herein.

38.     This count sets forth a claim on behalf of Plaintiffs against the Town for First Amendment retaliation, and is brought through 42 U.S.C. § 1983.

39.     Gulf Stream violated Plaintiffs' rights under the Petition and Free Speech Clauses of the First Amendment. These violations were of well-settled law and a type and character as to which any reasonable person would be aware. Plaintiffs' rights to freedoms of speech and expression were violated. Citizens, like Plaintiffs, have the right to engage in First Amendment activities (including those discussed above) without fear of reprisals.

40.     Plaintiffs, as set forth in part above, engaged in Constitutionally-protected activity by, among other things, speaking out on matters of public concern, petitioning the government, and seeking redress in lawful civil actions.

41.     After engaging in Constitutionally-protected activities, as related in part above, Plaintiffs were victims of retaliatory actions, including but not limited to those set forth herein; namely, the filing of the meritless RICO class action suit, maintaining the criminal prosecution of Mr. O'Boyle, abusing process in these matters, pursuing the failed Bar Complaints. This retaliatory conduct by Gulf Stream was of the type and character that would deter a person of ordinary sensibilities from exercising his or her First Amendment rights. Plaintiffs' protected activities were substantial or motivating factors in the adverse actions taken against them by Defendants..

42.     The Town retaliated against Mr. O'Boyle and other Plaintiffs for their First Amendment activity as alleged herein by taking adverse action against them, as set forth in part above.

43.     The Town thereby deprived Plaintiffs of their rights to freedom of speech and expression, and to Petition the government, protected by the First Amendment.

44.     Gulf Stream is a person under the laws applicable to this action. They are liable for their actions, which violated the civil rights of Plaintiffs under the First Amendment.

45.     Gulf Stream misused its power, possessed by virtue of state law and made possible because it was clothed with the authority of state law. The violations of Plaintiffs' rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. § 1983.

46.     Gulf Stream caused, or participated in the actions adverse to Plaintiffs, and/or made the decisions to engage in such actions, in violation of Plaintiffs' rights to Free Speech and Petition Clauses rights guaranteed by the First Amendment.

47.     Gulf Stream was the final decision maker in the actions taken against Plaintiffs complained of herein.  It is also the final policymaking authority. Moreover, the Town failed to implement adequate hiring, retaining, staffing, training and/or supervisory procedures, as a direct result of which led to violations of Plaintiffs' First Amendment rights.

48.     The Town, after notice of the Constitutional violations alleged herein, officially sanctioned/ratified the actions and refused to discipline its agents and employees, which sanction/ratification and refusal established a policy, by a final policymaker, that resulted in violations of Plaintiffs' Constitutional rights.

49.     The Town's retaliatory conduct against Plaintiffs are part of a pattern of wrongful and illegal behavior.

50.     As a direct and proximate result of the adverse actions set forth in part above, Gulf Stream has attempted to incapacitate and deter Plaintiffs from exercising their Constitutionally-protected rights to such a degree that would chill a person of ordinary firmness. Plaintiffs have suffered reputational harm, emotional distress, and other intangible or hedonic damages. Plaintiffs have also suffered damages in the form of legal defense costs, amongst other compensable injuries and damages; Mr. O'Boyle was also caused physical harm and additional emotional distress as a result of his unjustified retaliatory arrest. Lastly, Jonathan O'Boyle has suffered an increase in malpractice premiums as a result of the RICO Lawsuit and appurtenant state court counterclaims.

51.     These losses have occurred in the past, are occurring in the present, and are likely to continue into the future.

## COUNT II – MALICIOUS PROSECUTION OF RICO SUIT
### (WANTMAN)

52.     Plaintiffs adopt and incorporate by reference paragraphs 1 through 36 above as though fully set forth herein.

53.     Wantman instigated, caused, commenced, continued, and prosecuted its meritless class action RICO lawsuit against Plaintiffs.

54.     The lawsuit was based entirely on the practice of Mr. O'Boyle and others, including Jon O'Boyle and William Ring, to make requests for public documents and sue to enforce the right to access those documents as guaranteed by the Florida Constitution and its Public Records Act. Wantman received only one request for public records by only one of the underlying RICO defendants, which it eventually provided for inspection and copying.

55.     The RICO lawsuit was initiated for the improper purpose of harassing Mr. O'Boyle in retaliation for his First Amendment activities and to deter him from continuing to speak out publicly against the Town, with which Wantman had business relationships.

56.     Wantman commenced and continued to prosecute its RICO suit without probable cause or a reasonable belief, based on facts, circumstances known to them, or settled applicable law as to the validity of the claims brought against Plaintiffs.

57.     Wantman initiated and continued to prosecute the RICO lawsuit with the expressed intent of injuring Mr. O'Boyle and his associates and ingratiating itself with the Town. Wantman received a contract for Town business roughly three months after joining with the Town in its RICO Claims.

58.     On June 30, 2015, U.S. District Judge Kenneth Marra dismissed the meritless RICO action in its entirety, holding that as a matter of well-settled law the filing of public records requests or lawsuits to enforce a statutory right to public records are not RICO predicate acts. He further held that making public records requests were absolutely protected activity under the Florida constitutional and statutory law.

59.     Judge Marra also rejected the foundational assumption that the intent behind Mr. O'Boyle's public records request somehow lessened his absolute right to request documents from his government:

> Under Chapter 119 of the Florida Statutes, [O'Boyle, *et al*.] had the <u>absolute right</u> under current Florida law to file public records requests and then file lawsuits if the request went unanswered. <u>The motive for making a public records request is irrelevant under Florida law</u>.

*Town of Gulf Stream v. O'Boyle*, No. 9:15-CV-80182-KAM (ECF No. 47), p.7 (S.D. Fla. June 30, 2015) (emphasis added).

60.     As recognized by Judge Marra, the RICO lawsuit against Plaintiffs was without any merit because it was predicated on Mr. O'Boyle's exercise of his constitutionally and statutorily protected right to access government records. Despite these obvious deficiencies, the suit continued through an appeal. Ultimately, the United States Circuit Court of Appeals for the Eleventh Circuit affirmed the dismissal of the suit on all grounds.

61.     As a result of Wantman's malicious prosecution of the RICO lawsuit, Plaintiffs have suffered reputational harm, emotional distress, and other intangible or hedonic damages. Plaintiffs have also suffered damages in the form of legal defense costs, amongst other compensable injuries and damages and Jonathan O'Boyle has suffered an increase in malpractice premiums as a result of the RICO Lawsuit.

62.     These losses have occurred in the past, are occurring in the present, and are likely to continue into the future.

## COUNT III – ABUSE OF PROCESS
## (GULF STREAM AND WANTMAN)

63.     Plaintiffs adopt and incorporate by reference paragraphs 1 through 36 above as though fully set forth herein.

64.     Defendants maintained, continued, and prosecuted with an abuse of process its meritless class action lawsuit styled against Plaintiffs and others.

65.     In addition, the Town caused, continued, and prosecuted meritless state court process in counterclaims against Plaintiffs and others.

66.     Process was misused for the improper purpose of harassing Mr. O'Boyle including making a motion to declare him incompetent in retaliation for his First Amendment activities and to deter him from continuing to speak out publicly against the Town, with which

13

Wantman had numerous business relationships. Wantman's ultier motive in abusively issuing process via the RICO suit, *inter alia*, also was to ingratiate itself with the Town's business.

67.     Defendants continued to employ process to prosecute its RICO suit without probable cause or a reasonable belief, based on facts, circumstances known to them, or settled applicable law, as to the validity of the claims brought against Plaintiffs.

68.     Moreover, Gulf Stream continued causing the use of process in the criminal action against him as described above for the improper purpose of harassing Mr. O'Boyle in retaliation for his First Amendment activities and to deter him from continuing to speak out publicly against the Town.

69.     Defendants continued to prosecute the RICO lawsuit with the expressed intent of injuring Mr. O'Boyle and the other RICO defendants. Indeed, Mr. Sweetapple had stated on numerous occasions that the Town's RICO suit was evidence that Mr. O'Boyle was a "criminal" and an example as to why his friends, associates, and business partners should cease all relations with Mr. O'Boyle. In essence, the misuse of process was for the ulterior purpose, *inter alia*, of making Mr. O'Boyle, Ring, and Jon O'Boyle pariahs in their respective communities and untouchables.

70.     On June 30, 2015, U.S. District Judge Kenneth Marra dismissed the meritless RICO action in its entirety, holding that as a matter of well settled law the filing of public records requests or lawsuits to enforce a statutory right to public records are not RICO predicate acts. He further held that making public records requests were absolutely protected activity under the Florida constitutional and statutory law.

71.     Judge Marra also rejected the foundational assumption that the intent behind Mr. O'Boyle's public records request, which was allegedly to harass the Town of Gulf Stream, somehow lessened his absolute right to request documents from his government:

> Under Chapter 119 of the Florida Statutes, [O'Boyle, *et al.*] had the <u>absolute right</u> under current Florida law to file public records requests and then file lawsuits if the request went unanswered. <u>The motive for making a public records request is irrelevant under Florida law</u>.

*Town of Gulf Stream v. O'Boyle*, No. 9:15-CV-80182-KAM (ECF No. 47), p.7 (S.D. Fla. June 30, 2015) (emphasis added).

72.     As recognized by Judge Marra, Defendants' RICO lawsuit against Plaintiffs was without any merit because it was predicated on Mr. O'Boyle's exercise of his constitutionally and statutorily protected right to access government records and to petition the government by filing lawsuits when record requests are denied. Despite these obvious deficiencies, Defendants continued their suit against Plaintiffs by appealing Judge Marra's decision. The United States Court of Appeal for the Eleventh Circuit affirmed the dismissal of Gulf Stream's meritless and retaliatory suit on all grounds in a fulsome opinion.

73.     Defendant Gulf Stream further abused process by causing the maintenance of a criminal prosecution against Mr. O'Boyle, and has caused the abuse of process throughout the prosecution including by instigating the filing of a motion challenging his competency.

74.     As a result of Defendants' abuse of process for continuation of the RICO lawsuit, the Town's State Court Counterclaims, and the maintenance of the criminal prosecution, Plaintiffs have suffered damages and injury including but not limited to reputational harm, emotional distress, and other intangible or hedonic damages. Plaintiffs have also suffered damages in the form of legal defense costs, amongst other compensable injuries and damages

and Jonathan O'Boyle has suffered an increase in malpractice premiums as a result of the RICO Lawsuit.

75.     These losses have occurred in the past, are occurring in the present, and are likely to continue into the future.

### DEMAND FOR TRIAL BY JURY AND PRAYER FOR RELIEF

Plaintiffs hereby demands a jury trial as to all issues triable by a jury.

**WHEREFORE,** Plaintiffs respectfully requests that this Court enter judgment and award:

A.      Reasonable and appropriate compensatory damages for: physical pain and discomfort, emotional distress and mental suffering that have been cured by the passage of time and have resulted in no permanent impairment.

B.      Punitive damages against Defendant Wantman Group, Inc. for its malicious, wanton, willful, reckless and knowing violations of Plaintiffs constitutional rights under the First Amendment.

C.      Plaintiffs' costs, expenses and attorneys' fees pursuant to 42 U.S.C. § 1988.

D.      Awarding attorney fees, expenses and costs of this Section 1983 action pursuant to 42 U.S.C. § 1988.

E.      Attorney fees and costs, associated with Plaintiffs' defense of Gulf Stream and Wantman's malicious and abusive RICO suit, including emotional pain and suffering, loss of capacity for the enjoyment of life, and other intangible damages.

F.      Such further and other relief as the Court deems necessary and proper as well as damages specified in the individual counts not listed herein.

G.      Attorney fees and costs associated with Plaintiffs' defense of the retaliatory arrest initiated by Gulf Stream against Martin O'Boyle, including monetary damages for his injuries resulting from the arrest, emotional pain and suffering, loss of capacity for the enjoyment of life, and other intangible damages.

Dated: February 8, 2019

Respectfully submitted,

By  */s/ Richard J. Ovelmen*
     Richard J. Ovelmen (Fla. Bar No. 284904)
     E-mail:  rovelmen@carltonfields.com
     Jason P. Kairalla (Fla. Bar No. 594601)
     E-mail:  jkairalla@carltonfields.com
     Justin S. Wales (Fla. Bar No. 99212)
     E-mail: jwales@carltonfields.com
     CARLTON FIELDS JORDEN BURT, P.A.
     Miami Tower, 100 SE Second Street, Suite 4200
     Miami, Florida 33131-2803
     Telephone:  (305) 530-0050
     Facsimile:   (305) 530-0055

*Counsel for Plaintiffs*