## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  9:19-CV-80196-CANNON/BRANNON

MARTIN E. O'BOYLE; JONATHAN O'BOYLE;
WILLIAM RING,

      Plaintiffs,

v.

TOWN OF GULF STREAM,

      Defendant.

_____/

### PLAINTIFFS' MOTION TO RECONSIDER DISCOVERY ORDER REQUIRING THEM TO PRODUCE THEIR FEDERAL TAX RETURNS; MOTION TO STAY PRODUCTION OF RETURNS PENDING RULING ON MOTION TO RECONSIDER AND, IF NECESSARY, PENDING RULING BY DISTRICT JUDGE ON PLAINTIFFS' RULE 72(a) OBJECTION TO DISCOVERY ORDER; AND EXPEDITED MOTION FOR A RULING ON THE STAY MOTION <u>BY THE MARCH 19, 2021 DEADLINE FOR PRODUCING THE RETURNS</u>

Pursuant to Federal Rule of Procedure 54(b), Plaintiffs Martin E. O'Boyle, Jonathan O'Boyle, and William Ring (collectively, "Plaintiffs") move for reconsideration of that part of Magistrate Judge Brannon's Order Memorializing Discovery Rulings which requires them to produce their federal income tax returns in response to discovery requests by Defendant Town of Gulf Stream ("Town").  *See* Order Memorializing Discovery Rulings ("Discovery Order"), February 26, 2021, ECF No. 85.  Further, Plaintiffs move for a stay of the March 19, 2021 deadline for producing their tax returns pending Magistrate Judge Brannon's ruling on the Motion to Reconsider and, if necessary, pending a ruling by District Judge Cannon on Plaintiffs' Rule 72(a) Objection to Discovery Order ("Objection"), filed March 12, 2021, ECF No. 90, and any appeal to the Eleventh Circuit arising therefrom. The Town does not oppose a stay provided

that it has an opportunity to depose the Plaintiffs about their tax returns later should Magistrate

Judge Brannon's Discovery Order ultimately be upheld through final appeal.[1]

As explained more fully below, reconsideration is warranted in this case because the

Magistrate Judge did not accord the appropriate weight to 1) the "compelling need" legal

standard that applies to discovery of litigants' private and confidential income tax returns; 2) the

irrelevance of Plaintiffs' tax returns to their claims of general reputational harm in the local

community, as the Plaintiffs chose not to plead claims for damages for lost income, profits or

other financial harm to their business interests 3) the lack of proportionality of the requested

discovery in light of the absence of such economic loss claims; 4) that other, less intrusive means

of allowing the Defendant to establish that the Plaintiffs' incomes and businesses were not

adversely affected by the Town's unlawful acts of retaliation were and are readily available and

should have been explored and employed as alternatives to ordering production of the tax

returns; 5) that disclosing Plaintiffs' returns to the Town and/or its attorneys will make them

"public records" under Article I, section 24 of the Florida Constitution and Chapter 119, Florida

Statutes, and therefore subject to public disclosure under Florida law because no Florida statute

makes the tax returns exempt or confidential once they are in the hands of a Florida public

agency such as the Town; and 6) the substantial likelihood that a protective order will prove

inadequate to safeguard Plaintiffs' privacy in this case.

**REQUEST FOR EXPEDITED CONSIDERATION OF STAY MOTION**

Plaintiffs' Motion to Reconsider and Motion for Stay are "time-sensitive" and thus

warrant expedited briefing and consideration. *See* Local Rule 7.1 (d)(2) (setting procedure for

time-sensitive motions). The Discovery Order requires Plaintiffs to produce their subject tax

---

[1] Plaintiff's depositions are currently scheduled for March 23-25, 2021.

returns[2] by "no later than 5:00 p.m. EST on Friday, March 19, 2021." (Discovery Order, p.2, par.

3).  The deadline for the Town to file a response to this motion, March 29, 2021, is after that

disclosure deadline.  Plaintiffs therefore respectfully request that the Court either expedite the

briefing and rule on Plaintiffs' Motion to Reconsider and Stay Motion by March 19, 2020[3] or

that it grant a stay to preserve the status quo pending Magistrate Judge Brannon's consideration

of and ruling on the Motion to Reconsider and, if necessary, pending District Judge Cannon's

ruling on Plaintiffs' pending Objection.

## <u>REQUEST FOR HEARING</u>

Pursuant to Local Rule 7.1(b)(2), Plaintiffs request a hearing on their Motion to

Reconsider and their Motion for Stay.  Given the seriousness of the question before the Court

and the fact-specific issues on which the ruling may depend, Plaintiffs respectfully submit that a

---

[2] The returns are for the years 2014-2018.

[3] It is not Plaintiffs' intention to request unnecessary simultaneous judicial labor by the Magistrate Judge and the District Court Judge to resolve this matter. As discussed herein, the Eleventh Circuit has not squarely decided whether the filing of a timely objection to a non-final order issued by a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a) divests the Magistrate Judge of jurisdiction to reconsider the order, however, there is authority holding that a Magistrate Judge can entertain a motion to reconsider notwithstanding a pending appeal. *See, e.g., Summa v. Hofstra Univ.,* No. CV073307DRHARL, 2008 WL 11449288 (E.D.N.Y. Dec. 24, 2008) (Holding that "a Rule 72(a) appeal does not divest a magistrate judge of the power to decide a motion for reconsideration because there is no analogous rule to that where a district court is divested of jurisdiction by appeal to the Court of Appeals."); *Ball v. Martin Marietta Magnesia Specialties, Inc.,* 130 F.R.D. 77, 79 (W.D. Mich. 1990) (A Magistrate Judge entertained a motion to reconsider during the pendency of an objection pursuant to Fed. R. Civ. P. 72(a), reasoning, by analogy to the principles governing appeals from the District Court to the Court of Appeals, that a Magistrate Judge who finds merit in a motion to reconsider can request a remand from the district court to entertain the motion.). Here, if the Magistrate Judge will entertain the Motion to Reconsider, Plaintiffs will be content with a stay pending the resolution of that motion and, if denied, a stay pending a decision by the District Judge on the Rule 74(a) Objection filed March 12, 2021, ECF No. 90, and any appeal thereof.

hearing of no more than 30 minutes would be beneficial to the Court's consideration of the Plaintiffs' reconsideration and stay motions.

## BACKGROUND

### A.  Plaintiffs' Claims And Relevant Procedural Background

As set forth in the Second Amended Complaint ("SAC"), ECF No. 33, Plaintiffs allege that over a period of many years the Town adopted and implemented an unlawful, official policy of retaliation against them for engaging in First Amendment-protected activity—particularly activity involving Martin O'Boyle's outspoken advocacy against Town policies and vigorous exercise, and enforcement, of his right to obtain public records under Chapter 119, Florida Statutes and the Florida Constitution.  *See* SAC ¶¶ 34-53.  Plaintiffs therefore assert a claim against the Town under 42 U.S.C. § 1983.

Plaintiffs' claims arise from three specific instances of retaliatory conduct that began in 2014 pursuant to an official Town policy developed through years of conflict with the Plaintiffs. First, in August 2014, the Town filed complaints against Jonathan O'Boyle and William Ring with The Florida Bar, seeking to punish them for associating with and helping Martin O'Boyle exercise and enforce his right to obtain public records under Chapter 119, Florida Statutes and the Florida Constitution.  *Id.* ¶¶ 47-51.  Second, the Town filed a meritless lawsuit in the district court against Plaintiffs in February 2015 accusing them of violating the Racketeer Influenced and Corrupt Organizations ("RICO") Act, and also filed counterclaims against Plaintiffs in state court public records enforcement actions asserting similar unfounded claims.  Third, the Town orchestrated baseless criminal charges and prosecution against Martin O'Boyle arising from a September 22, 2015, meeting at Town Hall.[4]  *See id.* ¶¶ 40, 52-53.

_____

[4] Also pending before this Court is the Plaintiffs' Motion to Stay these proceedings [ECF No. 82] until the resolution of the criminal case against Mr. O'Boyle in the Florida Circuit Court. A

Plaintiffs allege that the Town's retaliatory conduct caused them to suffer reputational injury, emotional distress, and out-of-pocket costs to defend themselves against the Town's legal claims and Bar complaints. *Id.* ¶ 71. __Critically, however, Plaintiffs have not alleged and are not seeking recovery for any financial or reputational harm to their respective personal or business earnings or incomes__. *See generally* SAC; *see also See* Town Ex. A at 1-4, 24-25 (Jonathan O'Boyle interrogatory responses regarding damages); *id.* at 41-43, 72 (Martin O'Boyle responses); *id.* at 89-91, 114-15 (William Ring responses).[5]

**B.**   __Dispute Arising from the Town's  Attempt to Discover Plaintiffs' Tax Returns__

Although the Plaintiffs have not put their earnings at issue in this case, the First Set of Requests for Production ("RFP") directed at each Plaintiff begins with a demand that they produce their "tax returns, together with all attachments and schedules for the five years preceding the filing of the Complaint." *See* Town Ex. A at 28 (Plaintiff Jonathan O'Boyle RFP Responses); *id.* at 76 (same, to Plaintiff  Martin O'Boyle); *id.* at 118 (same, to Plaintiff William Ring).  Plaintiffs objected to these requests on the grounds that they seek "information that is not relevant to the claims or defenses in this case" and that the requests thus are "disproportionate to the needs of this case." *Id.*

---

status hearing in the criminal case is set for March 17, 2021 and Plaintiffs will update this Court thereafter regarding the trial schedule, it being Plaintiffs' belief that the trial is imminent.

[5] For the Court's convenience, Plaintiffs have attached to this motion the submissions and exhibits the parties provided to Magistrate Judge Brannon in advance of the February 26, 2021, discovery hearing.  References to "Town Ex. A" are to the exhibit containing the Plaintiffs' respective responses to the Town's discovery requests.  For ease of reference, Plaintiffs have applied page numbers to that exhibit.  These same attachments were submitted to District Judge Cannon with the Objection (ECF No. 90) pursuant to paragraph 5 of the Court's Order Setting Discovery Procedure, ECF No. 78.  Plaintiffs also have attached their Notice of Impasse, March 12, 2021, ECF No. 89.

Pursuant to the Court's Order Setting Discovery Procedure (ECF No. 78), the parties submitted short statements of their respective positions and participated in a discovery hearing before the Magistrate Judge on February 26, 2021 on the Town's requests for Plaintiffs' tax returns (and other requests not at issue in this Objection).  *See generally* Feb. 26, 2021 Hr'g Tr. at p. 32, line 4 to p. 40, line 15.  Plaintiffs asserted that the Town's RFP No. 1 must be considered and denied under the "compelling need" standard.  *See* Pls' Mem. at 3 (quoting *Anderson v. Premier Bev. Co.*, No. 09-61143-CIV-COHEN/SELTZER, 2010 U.S. Dist. LEXIS 150512, at *5 n.2 (S.D. Fla. Jan. 22, 2010); *see also* Hr'g Tr. at p. 32, line 12 to p. 34, line 1; p. 38, lines 6-19.

Under that standard, "a party seeking the production of tax returns must demonstrate (1) the relevance of the tax returns to the subject matter of the dispute and (2) the existence of a compelling need for the tax returns because the information contained therein is not otherwise readily obtainable."  *Anderson*, at *5 n.2 (citing *Dunkin' Donuts Inc. v. Mary's Donuts, Inc.*, No. 01-0392-CIV-GOLD/SIMONTON, 2001 U.S. Dist. LEXIS 25204, at *8-9 (S.D. Fla. Nov. 1, 2001); *Terwilliger v. York Int'l Corp.*, 176 F.R.D. 214, 217 (W.D. Va. 1997); and *SEC v. Cymaticolor Corp.*, 106 F.R.D. 545, 547 (S.D.N.Y. 1985)).

Although Magistrate Judge Brannon recognized that "this is a particularly difficult matter" (Hr'g Tr. At 32, line 8), he did not apply the "compelling need" standard.  Although the Magistrate Judge did not explain the basis for his decision to require Plaintiff's to produce their tax returns, it appears that he erroneously accepted the Town's argument in its Discovery Memorandum and its December 18, 2020 meet and confer letter that Plaintiffs' sensitive and private tax returns are

discoverable so long as they are "arguably relevant."[6] *See* Def's Discovery Mem. at 3; Dec. 18, 2020 Letter to Pls' Counsel at 4.

The Magistrate Judge ordered that the returns be produced (without "supporting attachments, schedules, or documentation")   by no later than March 19, 2021.  Hr'g Tr. at p. 40, lines 8-11 (ordering production); Discovery Order ¶ 3 (same).[7]

At the hearing, when the Magistrate Judge instructed the parties to negotiate a protective order to safeguard these highly sensitive financial records, the Town responded that it may not be able to preclude public disclosure of the tax returns. Hr'g Tr. at p. 39, lines 15 to p. 40, line11; Discovery Order ¶ 3.  The Town suggested that Florida's robust public records law—the  Public Records Act (Chapter 119, Fla. Stat.) and Article I, section 24 of the Florida Constitution—might override any such protective order and that its receipt of Plaintiffs' tax returns would render them "public records" subject to disclosure to anyone requesting them from the Town.  Hr'g Tr. at p. 39, line 24 to p. 40, line 7.  That suggestion and the parties' long adversarial history,[8] has given

---

[6] At the hearing, the Magistrate Judge asked Plaintiffs' counsel "So if you are alleging reputational harm or you are claiming that [you] would have been subject to shame and ridicule, wouldn't that have some impact on the bottom line *at least potentially*" (emphasis added).  This sounds like the "arguably relevant" standard for which the Town was advocating.

[7] In the provision pertaining to Plaintiffs' tax records, the Discovery Order refers to "Interrogatory # 19 to William Ring."  To clarify, that interrogatory does not seek information concerning Mr. Ring's tax returns. *See* Town Ex. A at 114-15.

[8] The Town has frequently chosen *proactively* to make certain information concerning Martin O'Boyle public.  For example, on its public YouTube channel, and among unrelated videos of routine Town Commission and other civic meetings, the Town has posted footage of Mr. O'Boyle's deposition testimony in another action and other testimony the Town believes to be critical of him.  *See generally* https://www.youtube.com/channel/UCyJTjen2HMOSbss-CYOpzdQ/videos. Similarly, in connection with *O'Boyle v. Sweetapple, et al.*, No. 14-cv-81250-KAM, which Mr. O'Boyle filed against the Town and one its lawyers over the meritless RICO Act claim (but later dismissed without prejudice), the Town has selectively posted *some* of its case file online, including Mr. O'Boyle's supplemental discovery responses to Town interrogatories regarding his income.  *See* http://www2.gulf-stream.org/WebLink/0/doc/97509/Page1.aspx.  Suffice it to say that Plaintiffs have a reasonable

Plaintiffs and their spouses[9] substantial cause for concern.  In lieu of producing the returns, and in light of the "public records" issue and Plaintiffs' concerns that their private and highly sensitive tax returns will be "leaked," the Plaintiffs have offered to stipulate that they suffered no adverse impact to their incomes as a result of the Town's retaliations and, indeed, that their incomes substantially increased over the subject 5 year period.  The Town has rejected these alternatives, causing Plaintiffs to doubt that the Town's true reason for requesting the returns is the defense of this case.  Accordingly, Plaintiffs filed a Notice of Impasse Regarding the Filing of a Motion for Protective Order on March 12, 2021, ECF 89, which sets forth the record of the parties' communications regarding their inability to agree on a protective order that Plaintiffs believed would be effective.

## MOTION TO RECONSIDER

## LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) authorizes reconsideration of non-final, interlocutory orders such as the Discovery Order.  The rule does not specify a standard by which motions to reconsider are to be evaluated,[10]  but this Court has consistently held that "There are three grounds justifying reconsideration under Rules 54(b), Rule 59(e) and Rule 60(b) : 1) an intervening  change in controlling law; (2) the availability of new evidence; and (3) the need to

---

basis to fear that their tax returns are highly likely to be "leaked" to the public if they are allowed to come into the Town's hands no matter what this Court may say in a protective order.

[9] Plaintiffs Martin E. O'Boyle and William Ring were each married and filed joint returns with their wives during the 2014-2018 timeframe covered by the Discovery Order, so the order substantially affects the privacy rights of two non-parties, Sheila O'Boyle and Audrey Ring, in addition to its impact on the Plaintiffs themselves.

[10] *See De Mello E. Silva v. Citibank*, No.-19-23547-CIV-COOKE/GOODMAN, 2020 WL 8115993, at *1 (Granting  reconsideration and stating "[R]ule 54(b) does not specify a standard by which courts evaluate a motion for reconsideration of an interlocutory order, but the Eleventh Circuit has indicated 'Rule 54(b) takes after Rule 60(b)'").

correct clear error or to prevent manifest injustice" *Park Jensen  Bennett LLP v. Brooks*, No. 17-80973-CIV, 2018 WL 3900504, at *1 (S.D.  Fla. July 19, 2018 (Mag. J. Brannon); *Gossamer Wing, LLC as Trustee v. The Bank of New York Mellon, as Trustee, etc.*, No. 21-80319-CIV-CANNON/BRANNON 2021 WL 940612, (S.D. Fla March 11, 2021) (denying reconsideration under either Rule 59(e) of Rule 60(b) and stating that "A district court has broad discretion in ruling on a motion for reconsideration under Rule 60(b) and should balance the need for substantial justice against he sanctity of final judgments."); *Donoff v. Delta Airlines, Inc.*, No. 18-81258-CIV-MIDDLEBROOKS/BRANNON, 2019 WL 9575231 (S. D. Fla. November 22, 2019) (granting reconsideration  of discovery order and modifying protective order to include an attorney's eyes only protocol to protect sensitive corporate financial information).[11]

## **ARGUMENT**

### A. **The Order To Produce Plaintiffs' Tax Returns Should Be Reconsidered and Vacated or Modified Because The Magistrate Judge Failed To Apply The "Compelling Need" Standard.**

Income tax returns are by nature highly sensitive, and "courts should be reluctant to order [them] disclosed during discovery." *See Anderson*, 2010 U.S. Dist. LEXIS 150512, at *5 n.2. (citing *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993); *De Masi v. Weiss*, 669 F.2d 114, 119-20 (3rd Cir. 1982); *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975)).  Indeed, the "greater weight of authority . . . has concluded that tax returns are subject to at least some level of heightened protection from

---

[11] Although reconsideration is reserved for uncommon occasions, there is no question but that it should be granted in a proper case as has been recognized by multiple Supreme Court justices, as is exemplified by these two famous quotes: 1) "I see no reason why I should be consciously wrong today because I was unconsciously wrong yesterday." (Justice Robert H. Jackson); and 2) "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." (Justice Felix Frankfurter).

disclosure." *Pendlebury v. Starbucks Coffee Co.*, No. 04-80521-CIV-MARRA/SELTZER, 2005 U.S. Dist. LEXIS 36748, at *4 (S.D. Fla. Aug. 29, 2005).

Courts thus regularly apply the "compelling need" standard to requests for tax returns.[12] *See, e.g.*, *Urban v. Wesco Distribution*, No. 10-80782-Civ-DIMITROULEAS, 2011 U.S. Dist. LEXIS 165832, at *17 (S.D. Fla. June 9, 2011); *Chavez v. Arancedo*, No. 17-20003-Civ-TORRES, 2017 U.S. Dist. LEXIS 125044, at *10 (S.D. Fla. Aug. 8, 2017) (noting that tax returns are "ordinarily not produced" and finding "compelling need" standard satisfied in case over improper wage payments). Under this test, "a party seeking the production of tax returns [must] demonstrate (1) the relevance of the tax returns to the subject matter of the dispute and (2) the existence of a compelling need for the tax returns because the information contained therein is not otherwise readily obtainable." *Anderson*, 2010 U.S. Dist. LEXIS 150512, at *5 n.2.

The Eleventh Circuit has not expressly "either adopt[ed] or reject[ed] a heightened standard for production of tax returns." *Id.* Instead, in *Maddow v. Procter & Gamble Company*, the court held that it was not an abuse of discretion to require production of tax returns in an employment discrimination case that necessarily implicated the plaintiff's earnings. 107 F.3d 846, 853 (11th Cir. 1997). Central to the court's holding in *Maddow*, however, was its determination that the tax records at issue would reveal relevant information not otherwise contained in other earnings-related materials the plaintiffs had already produced. *Id.* Likewise,

---

[12] *See also Bonachea-Perez v. Ore Seafood, Inc.*, No. 10-24603-CIV-UNGARO / TORRES, 2011 U.S. Dist. LEXIS 163439, at *8 (S.D. Fla. July 29, 2011) ("A party should not be required to produce income tax returns absent a showing of compelling need."); *Camp v. Corr. Med. Servs.*, No. 2:08cv227-WKW (WO), 2009 U.S. Dist. LEXIS 12034, at *8 n.3 (M.D. Ala. February 17, 2009) (applying standard because "[t]here is nothing in *Maddow* which suggests that the issue of compelling need was raised; it certainly was not decided").

the Eleventh Circuit stressed that the sensitive financial information contained in the tax forms

"would be protected by the Protective Order entered into by the parties."  *Id.*

Here, the Magistrate Judge did not require the Town to establish that it could not obtain

the information it seeks—*i.e.*, whether the Plaintiffs earned more or less income after the Town

began harming their personal reputations—through other, less-intrusive means.  *See* Hr'g Tr. at

p. 38, lines 6-19.  The crux of the Town's argument for the relevance of the Plaintiffs' tax returns

is that

> [The tax returns] would show that [Plaintiffs'] income has not been impacted by
> this alleged damage to their reputation. (*Id*. at p. 36, lines 23-25) *** We should
> be allowed to conduct discovery and say, you know what?  Their bottom line has
> not been impacted. (*Id*. at p. 37, lines 6-8).

But there are multiple avenues of discovery of the information the Town argues that it needs

without unnecessarily implicating other, highly sensitive information that has no bearing on the

inquiry.  In particular, the Town could serve Rule 36 requests that Plaintiffs admit that their

incomes increased over those years, and ask similar questions of Plaintiffs at their depositions.

*See* Hr'g Tr. at p. 38, lines 6-19 (arguing that the Town had other, less-intrusive avenues to

obtain the allegedly relevant information).  And if the Town had a good-faith basis for doubting

that Plaintiffs' sworn responses to such inquiries, Plaintiffs' tax returns could be reviewed *in*

*camera* to confirm the accuracy of their responses.  *See Donoff*, 2019 WL 9575231 (Magistrate

Judge Brannon found that reconsideration was warranted after "reviewed a sampling of the at-

issue redacted documents *in camera*").

Moreover, in light of the Town's reaction to the possibility of a protective order, and

given the robust right of access to public records under Florida law, there is a substantial risk that

Plaintiffs will be unable to rely upon a protective order to prevent public disclosure of their

sensitive information.  *See* Fla. Stat. § 119.01 ("It is the policy of this state that all state, county,

and municipal records are open for personal inspection and copying by any person."); *id.* §
119.011(12) (defining "public records" to mean all documents of any type "made or received
pursuant to law or ordinance or in connection with the transaction of official business"); *see also
Wallace v. Guzman*, 687 So.2d 1351, 1352-54 (Fla. 3d DCA 1997) (ordering county housing
finance authority to disclose members' personal tax returns, including joint returns containing
non-member information of spouses, submitted in connection with authority's application to
open a savings bank).  If anyone requests the Plaintiffs' tax returns and if the Town denies that
request based upon a protective order entered by this Court, there is a substantial likelihood that
Plaintiffs' tax returns will become the subjects of litigation in Florida's state courts as no state
statute makes the returns exempt or confidential from public disclosure. *See Wait v. Florida
Power & Light Company*, 372 So.2d 420, 424 (Fla. 1979) ("[T]he legislature intended to exempt
those public records made confidential by statutory law and not those documents which are
confidential or privileged only as a result of the judicially created privileges.)  In that event, the
Plaintiffs and their spouses may be required to incur substantial expense and emotional distress
for having to intervene in state court public records litigation to defend their rights to privacy,
regardless of the ultimate outcome of the litigation.  Applying the heightened protection to a
party's income tax returns is thus imperative in cases like this one, where there may be no
practical way to limit or prevent their extra-judicial use or to mitigate the possibility of harm and
harassment.

Respectfully, justice requires that the Magistrate Judge reconsider the failure to apply the
"compelling need" standard to the Town's request for Plaintiffs' tax returns and set aside the
Discovery Order or modify it to avoid the threatened harm to the Plaintiffs' privacy interests.

**B.**     **The Order To Produce the Tax Returns Should Be Reconsidered And Vacated Or Modified Because It Was Clearly Erroneous To Determine That The Returns Are Relevant To The Issues In This Case.**

Even if considered under the "arguably relevant" standard, rather than the "compelling need" standard, the Discovery Order should be reconsidered and vacated or modified because the Magistrate Judge clearly erred in determining that the information contained in Plaintiffs' tax returns may be probative of the scope of their reputational harm.

Plaintiffs have not pleaded any loss of income and do not seek recovery for any harm to their respective business interests.  The only economic damages they identify in the SAC and their discovery responses are out-of-pocket costs to defend themselves against the Town's meritless claims and Bar complaints, and the medical expenses Martin O'Boyle incurred in connection with the September 22, 2015, incident at Town Hall.  Thus, their "overall financial condition is not an issue in the case [, and their] tax returns are not relevant to any party's claim or defense[.]"  *Inetianbor v. Cashcall, Inc.*, No. 13-60066-CIV-COHN/SELTZER, 2016 U.S. Dist. LEXIS 114804, at * 10 (S.D. Fla. August 26, 2016) (declining to compel tax returns in case involving fraud and related claims).[13]

Further, the Plaintiffs earn income from their multi-state business enterprises but are seeking only generalized reputational harm local to the community of Gulf Stream, a town of about a few hundred residents.  *See* Hr'g Tr. at p. 33, lines 7-19; p. 34, line 10 to p.35, line 7. Martin O'Boyle has spent decades developing real estate across the United States.  The nature of that work, which involves various real-estate entities and complex tax accounting (including, for

---

[13] Indeed, a rule of law requiring every Section 1983 plaintiff to disclose income tax returns, even in the absence of a claim for lost income, would provide a powerful disincentive for all plaintiffs with viable claims against municipal governments in Florida.  Every municipal government will argue that the state's robust public records law precludes them from maintaining the confidentiality of tax records.

example, depreciation deductions potentially applicable to separate projects in multiple jurisdictions), results in a personal income tax return for Mr. O'Boyle that cannot reasonably be examined for evidence of the type of yearly gross-earnings picture that the Town suggests would be relevant to the issue of whether reputational harm reduced those earnings.  Furthermore, Jonathan O'Boyle operates a multi-state law firm with offices in Florida, New Jersey, and Pennsylvania, and William Ring has worked for both O'Boyles in support of their respective ventures.  While their sources of income would thus reveal a more "typical" and understandable picture of their respective year-to-year earnings, the returns of both Jonathan O'Boyle and William Ring would reveal an increase in gross income over the 2014-2018 tax years at issue.[14] The Plaintiffs' tax returns therefore are completely irrelevant.

Finally, much of the information on Plaintiffs' tax returns reveals financial information that has no bearing on their gross earnings—such as the amount of interest or capital gains income, claimed deductions or credits, prior tax payments, taxable income, and taxes owed cannot possibly relate to how the Town's retaliatory conduct impaired the Plaintiffs' reputations in their community.

In short, the Magistrate Judge clearly erred in determining that Plaintiffs' tax returns are relevant and the order should be reconsidered and vacated or modified.

---

[14] As noted above, *see supra*, p. 8, Plaintiffs have offered to stipulate that they suffered no adverse impact to their incomes as a result of the Town's retaliations and, indeed, that their incomes substantially increased over the subject 5 year period, but the Town has rejected these alternatives.  See Notice of Impasse Regarding the Filing of a Motion for Protective Order, March 12, 2021, ECF 89.

C.    **The Order To Produce Tax Returns Should Also Be Reconsidered And Vacated Or Modified Because It Was Clearly Erroneous To Determine That The Tax Return Discovery Is Proportionate.**

When weighing the proportionality of discovery, courts must consider, among other

things, "whether the burden or expense of the proposed discovery outweighs its likely benefit."

Fed. R. Civ. P. 26(b)(1).  "Proportionality and relevance are 'conjoined' concepts," such that the

less relevant the information, the more likely that its discovery is disproportionate to the needs of

the case.  *See Runton v. Brookdale Senior Living, Inc.*, No. 17-60664-CIV-

ALTONAGA/GOODMAN, 2018 U.S. Dist. LEXIS 31375, at *17 (S.D. Fla. Feb. 27, 2018)

(citation omitted) (noting corollary that discovery of information of greater relevance is more

likely to be proportionate).  Thus, even if the Magistrate Judge did not clearly err as a matter of

law in finding the Plaintiffs' tax returns to be potentially relevant in a case where the Plaintiffs

make no claims to lost earnings or income, the Discovery Order should nonetheless be

reconsidered and vacated or modified because the court clearly erred in weighing the

proportionality of this discovery in the context of this case.

"[M]indful of the sensitive and private nature of such information," courts compelling the

production of tax returns "will therefore enter a protective order to protect [the returns] from

unnecessary and unwarranted dissemination."  *See, e.g.*, *Gottwald v. Producers Grp. I, LLC*, No.

12-81297-CIV-MARRA/MATTHEWMAN, 2013 U.S. Dist. LEXIS 59452, at *8 (S.D. Fla. Apr.

25, 2013); *Coach, Inc. v. Visitors Flea Mkt.*, LLC, No. 6:11-cv-1905-Orl-19TBS, 2013 U.S. Dist.

LEXIS 152915, at *7 (M.D. Fla. Oct. 24, 2013) (ordering parties to fashion proposed protective

order because "[t]ax returns routinely contain sensitive financial information and society tends to

view and treat tax returns as confidential documents").

However, in light of the Town's acknowledgement that any protective order from this

Court might give way to the right of access to public records under Florida law, *see* Hr'g Tr. at p.

39, line 24 to p. 40, line 7, Plaintiffs face a substantial risk that their sensitive financial information—including that belonging to their spouses on their joint returns—will be publicly disseminated to anyone who asks, for whatever reason.  In exchange for this significant burden to be borne by the Plaintiffs and their families, the Town would receive five years of tax returns that will have no relevance to the issues in this case.  The failure to properly weigh that burden against the likely benefit of the requested discovery and the presence of alternative means of discovery that are less burdensome was clearly erroneous.  Because the proper analysis leads to only one correct conclusion—that the discovery sought is disproportionate—the Court should reconsider the Discovery Order and vacate or modify it.

## **MOTION FOR STAY**

Plaintiffs also move (**without opposition from the Town**) for a stay of the current March 19, 2021 deadline by which they have been ordered to produce their federal income tax returns in response the Town's discovery requests.  *See* Discovery Order, ECF No. 85.  For the reasons discussed above and below, that portion of the Discovery Order should be stayed pending rulings on Plaintiffs' Motion to Reconsider, Plaintiffs' pending Objection to Discovery Order (ECF No. 90) and an appeal, if necessary, to the Eleventh Circuit.

To obtain a stay of Magistrate Judge Brannon's discovery order,  Plaintiffs "must show (1) likelihood of success on the merits of the Motion to Reconsider and/or the Objection, (2) irreparable injury to []absent a stay, (3) lack of substantial prejudice to [the opposing party], and (4) the stay would serve the public interest."  *Marllantas, Inc. v. Cissna*, No. 16-62522-CIV-DIMITROULEAS, 2017 U.S. Dist. LEXIS 228667, at *3-4 (S.D. Fla. Dec. 12, 2017).  Because all of these factors favor a stay in this case and because the Town does not oppose this relief, Plaintiffs respectfully request that the portion of the Discovery Order requiring the production of

Plaintiffs'' tax returns be stayed pending rulings on their  Motion to Reconsider, Objection and any appeal to the Eleventh Circuit.

       D.      **<u>Plaintiffs Are Likely To Prevail On The Merits Of Their Objection.</u>**

For all of the reasons discussed above in Plaintiffs' Motion to Reconsider and in Plaintiffs' Objection (ECF No. 90),  Plaintiffs have argued multiple serious grounds for vacating the order requiring Plaintiffs to produce their tax returns to the Town.  *See* Fed. R. Civ. P. 54(b) (authorizing reconsideration of an interlocutory order) and 72(a) (requiring non-dispositive discovery orders to be modified or set aside when they are "clearly erroneous or contrary to law").  Plaintiffs' arguments have substantial merit, and the Court is therefore likely to vacate or modify the Discovery Order.

       E.      **<u>Plaintiffs Would Be Irreparably Harmed If They Must Produce Their Tax Returns During The Pendency Of The Court's Review Of Plaintiffs' Motion To Reconsider And Their Objection.</u>**

Given the likelihood of success on the merits of Plaintiffs' Motion to Reconsider and Objection, the Plaintiffs would be seriously harmed if they nonetheless had to produce their tax returns before the Court could sustain their position.  Once produced, Plaintiffs and the Court cannot claw the documents back—as the Town has suggested, the Plaintiffs' tax returns, upon production, would become "public records," and the Town cannot simply destroy them after receipt.  Once disclosed, the damage to the Plaintiffs' right of privacy would be irreparable and irreversible.  This factor supports a stay of the production deadline.

       F.      **<u>The Town Will Not Suffer Substantial Prejudice If The Court Grants A Stay Pending The Court's Rulings On The Motion To Reconsider And The Objection.</u>**

As noted above and in the certification accompanying this motion, the Town does not oppose a stay of the Discovery Order pending rulings on the Motion to Reconsider, the Objection and any subsequent appeal to the Eleventh Circuit.  The Town asks only that it be

provided with another opportunity to depose the Plaintiffs on the issues related to the tax returns if the returns are not produced before the depositions, currently scheduled to begin March 23, 2021, subject to the District Court's ruling on Plaintiffs' pending Motion for Stay of Discovery (ECF No. 82) relating to the pendency of Marty O'Boyle's criminal trial. Plaintiffs do not oppose this contingency. [15]

Because the Town will not suffer any substantial prejudice from the requested stay, this factor also supports granting the motion.

### G.     A Stay Will Serve The Public Interest.

This factor also supports staying the Discovery Order deadline for producing the tax returns pending resolution of Plaintiffs' Motion to Reconsider and its Objection. In particular, the public has an interest in protecting the right of privacy in financial records. *See, e.g.*, *Woodward v. Berkery*, 714 So. 2d 1027, 1035 (Fla. 4th DCA 1997) ("Private financial worth information is thus usually withheld from the world at large unless the courts compel such disclosure. Even then, disclosure is made only so far as necessary."); *Rahal v. Mussel Beach Rest. Inc.*, No. 17-CIV-80442-MIDDLEBROOKS, 2017 U.S. Dist. LEXIS 225127, at *2 (S.D. Fla. Dec. 1, 2017) ("personal finances are among those private matters kept secret by most people") (citing Fla. Const. art. I, § 23; *Rowe v. Rodriguez-Schmidt*, 89 So. 3d 1101, 1103 (Fla. 2d DCA 2012)). An important component of the right to privacy is that a person will not be required to irrevocably lose his privacy during the pendency of efforts to protect his privacy interests through the appeals process. The public interest in a stay during such an appeal is especially heightened in the absence of any prejudice to the pending litigation or the parties.

Thus, this final factor also supports granting Plaintiffs' requested stay.

---

[15] The current deadline for discovery under the Scheduling Order is April 26, 2021, ECF No. 77.

## CONCLUSION

For the foregoing reasons, the Court should reconsider the Discovery Order and vacate or modify it so as not to require the production of Plaintiffs' income tax returns.   Furthermore, the Court should grant a stay of the March 19, 2021 deadline for producing Plaintiffs' tax returns pending rulings on the Motion to Reconsider, the Objection and any appeal to the Eleventh Circuit.

## Certification of Counsel

Pursuant to Local Rule 7.1(a)(3), I  hereby certify that I conferred by email with Counsel for the Town of Gulf Stream, Hudson Gill, and by telephone with Jeff Hochman in a good faith effort to resolve or narrow the issues raised in the Motion to Reconsider and the Motion for Stay. Mr. Hochman informed me that the Town does not oppose the granting of a stay of the Discovery Order insofar as it requires Plaintiffs to produce their tax returns by 5:00 p.m. Friday, March 19, 2021.  And the Town does not oppose the stay continuing until after Plaintiffs' Motion to Reconsider, their Objection to the Discovery Order and any appeal to the Eleventh Circuit are finally adjudicated.  If the depositions of the Plaintiffs are taken starting March 23, 2021 as currently scheduled, the Town intends to reserve asking questions relating to the tax returns with the understanding that the Town will have another opportunity to ask these questions if and when the tax returns are produced.  Plaintiffs are of the view that the Town is free to explore at the deposition the issue of whether Plaintiffs' have suffered any adverse impact on their earnings that they attribute to the Town's acts of retaliation and that such questioning is an alternative to producing the tax returns that should be fully explored.  Nonetheless, Plaintiffs will not argue that the Town's failure to ask such questions while the Discovery Order is stayed will constitute a waiver by the Town of its right reconvene the depositions later to ask these questions.

*/s/ Martin Reeder*
L. Martin Reeder, Jr.

19

Dated: March 15, 2021

Respectfully submitted,

ATHERTON GALARDI MULLEN
& REEDER PA

By: _/s/ Martin Reeder_
L. Martin Reeder, Jr.
Florida Bar No. 308684
224 Datura Street, Suite 815
West Palm Beach, FL 33401
Telephone: (561) 293-2530
Fax: (561) 293-2593
martin@athertonlg.com

BALLARD SPAHR LLP
Charles D. Tobin (Fla. Bar No. 816345)
Chad R. Bowman (admitted _pro hac vice_)
Matthew Cate (admitted _pro hac vice_)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2218
Fax: (202) 661-2299
tobinc@ballardspahr.com
bowmanchad@ballardspahr.com
catem@ballardspahr.com

_Counsel for Plaintiffs_

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 15, 2021, I caused a true and correct copy of the

foregoing to be electronically filed with the Clerk of the Court using CM/ECF. I also certify the

foregoing document is being served this day on all counsel of record in this case via transmission

of Notice of Electronic Filing generated by CM/ECF.

_/s/ Martin Reeder_
L. Martin Reeder, Jr.
Florida Bar No. 308684

*Martin O'Boyle, Jonathan R. O'Boyle, and William Ring v. Town of Gulf Stream*
**United States District Court, Southern District of Florida**
**Case No.: 19-cv-80196- CANNON/BRANNON**

### SERVICE LIST

HUDSON C. GILL, ESQ.
Florida Bar No. 015274
JEFFREY L. HOCHMAN, ESQ.
Florida Bar No. 902098
JOHNSON, ANSELMO, MURDOCH,
BURKE, PIPER & HOCHMAN, PA
2455 E. Sunrise Boulevard, Suite 1000
Fort Lauderdale, FL 33304
Tel.: 954-463-0100
Fax: 954-463-2444
Email: hgill@jambg.com;
hochman@jambg.com; blanca@jambg.com;
finley@jambg.com;  fox@jambg.com;
diaz@jambg.com; rondon@jambg.com;
garrido@jambg.com

*Counsel for Defendant, Town of Gulf Stream*